UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   CR-08-524 (SJ)
        v.                   :
                            :   October 6, 2008
JOHN RODDEN,                 :
                            :   Brooklyn, New York
            Defendant.       :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          ROSLYNN R. MAUSKOPF, ESQ.
                             UNITED STATES ATTORNEY
                             BY: CHARLES KLEINBERG, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             225 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           MICHAEL DOWD, ESQ.




Audio Operator:


Court Transcriber:           ARIA TRANSCRIPTIONS
                             c/o Elizabeth Barron
                             31 Terrace Drive, 1st Floor
                             Nyack, New York 10960
                             (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE COURT:  Good afternoon, everybody.

2          ALL:  Good afternoon, your Honor.

3          THE COURT:  Please have a seat and make yourselves

4   comfortable.

5          THE CLERK:  Criminal cause for guilty plea.

6   United States of America versus John Rodden, docket number

7   08-CR-542.  Counsel, please state your appearances for the

8   record.

9          MR. KLEINBERG:  Charles Kleinberg for the United

10  States.  Good afternoon, your Honor.

11          MR. DOWD:  Michael J. Dowd, D-o-w-d, for the

12  defendant, John Rodden, your Honor.

13          THE COURT:  And where's Mr. Rodden?

14          MR. DOWD:  Right here, your Honor.

15          THE COURT:  Mr. Rodden, do you speak and

16  understand English?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  Alright.  Essentially, you are now

19  under arrest.  You're under arrest because you're in my

20  courtroom with a charge being lodged against you.  It's not

21  the traditional police drama on TV form of arrest.  But

22  you're, in essence, subject to the authority of the Court.

23          And because you're under arrest, it becomes my

24  responsibility to make sure you understand certain rights

25  that you have.

1          You have the right to remain silent.  You don't

2     have to make any statements or answer any questions.  And if

3     you were choose to exercise that right, it couldn't be held

4     against you in a court of law by arguing that your silence

5     is evidence of your guilt.

6          On the other hand, if you make statements and

7     they're made to anyone other than your attorney, the

8     prosecutor may learn what you've said and try to use it

9     against you.

10          Do you understand me so far?

11          THE DEFENDANT:  Yes.

12          THE COURT:  You also have the right to be defended

13     by an attorney.  Mr. Dowd, are you appointed or retained?

14          MR. DOWD:  Retained, your Honor.

15          THE COURT:  And if you couldn't afford an

16     attorney, the Court would appoint a lawyer to defend you at

17     no cost to you.

18          Is it accurate that you've retained Mr. Dowd and

19     you want him to be your lawyer in this case?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And you have a right to know what

22     you're being accused of but we're going to get to that later

23     in the proceedings that we have ahead of us today.  Alright?

24          Are you following me so far?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Now, the reason that we're here today

2     is that I'm told by your attorney and Mr. Kleinberg that you

3     have made a decision.  And that the decision is that you

4     wish to waive your right to indictment and enter a plea of

5     guilty to a charge pursuant to an agreement with the

6     prosecution.

7          THE DEFENDANT:  Yeah.

8          THE COURT:  Before I can hear any plea of guilty

9     you might choose to offer, I need to make sure that you

10    understand that I am not the judge who is presiding over

11    your case.  That is United States District Judge Sterling

12    Johnson.

13          Judge Johnson is the one who will decide whether

14    any plea of guilty you might choose to offer today should be

15    accepted and how your sentence should be determined.  I'm a

16    Magistrate Judge not a District Judge like Judge Johnson.

17    And as a result, I lack the authority under the law to

18    formally accept your plea or decide your sentence.

19          If you wish, you have the absolute right to

20    present any plea of guilty you wish to make before Judge

21    Johnson.  If that is your preference, there will be no

22    prejudice to you.  You'll be permitted to plead guilty on

23    the same terms and conditions being offered to you today on

24    another day that is convenient to Judge Johnson.

25          In the alternative though, if I have your consent

1    and agreement, I do have the authority to be the judge who

2    listens to your guilty plea.  And if that is your choice, I

3    will arrange for this entire proceeding to be recorded so

4    that Judge Johnson has a complete record of all the things

5    we've said before he's called upon to decide whether your

6    plea should be accepted or how your sentence should be

7    calculated.

8             Did you follow all of that?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Do you wish to give up your right to

11   have Judge Johnson listen to your plea and do you agree to

12   proceed instead before me?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Are you making this decision

15   voluntarily and of your own free will?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Do you see the form I'm holding up for

18   you or are you not able to see it from that distance?

19            THE DEFENDANT:  Yeah, I can see the form.

20            THE COURT:  Did you review this form and sign it?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Before you signed it, did you go over

23   it with Mr. Dowd and understand what you were signing?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Mr. Dowd, are you aware of any reason

1  why your client should not consent to proceed before me for

2  these purposes?

3          MR. DOWD:  No, Sir.

4          THE COURT:  I find the consent of the defendant

5  knowing and voluntary and I add my endorsement to the

6  referral order and consent form to reflect my finding.

7          Mr. Rodden, before I may recommend to Judge

8  Johnson that he accept any guilty plea you might choose to

9  offer, I'm going to have to ask you a lot of questions.  The

10  questions are important.  They're designed to make sure you

11  understand what a serious decision it is that you're about

12  to make.

13          They are also designed to protect the prosecutor

14  and the Court by creating a record that will show that I

15  explained to you what your rights were, you told me you

16  understood your rights and then you told me you wanted to

17  give up those rights.  Once that happens, if you proceed to

18  plead guilty, your plea will be legally valid and

19  permanently binding upon you.

20          I therefore urge you listen carefully to the

21  questions.  If I ask you something and you're not sure you

22  understand it, tell me so that I can try to rephrase it and

23  try to make clearer.  And if you want to stop at any point

24  because you want to ask me a question or because you would

25  like to have the opportunity to speak privately with Mr.

1    Dowd, all you have to do is tell me and that'll be fine.

2             Are we clear with each other so far?

3             THE DEFENDANT:  Yes.

4             THE COURT:  It's very important that you tell the

5    truth.  I'm going to direct that you be placed under oath.

6    Please rise.

7             (Defendant is sworn)

8             THE COURT:  Now that you've taken an oath, when

9    you answer my questions you do so subject to the penalties

10   of perjury or making a false statement if you don't tell me

11   the truth.

12            THE DEFENDANT:  Yes.

13            THE COURT:  That means if you lie, the prosecutor

14   could bring a new charge against you just for that.

15            Are we clear?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Tell me your full name.

18            THE DEFENDANT:  John Rodden.

19            THE COURT:  How old are you?

20            THE DEFENDANT:  Fifty-four.

21            THE COURT:  How far did you go in school?

22            THE DEFENDANT:  To high school.

23            THE COURT:  Did you finish high school?

24            THE DEFENDANT:  Yes.  It's different in my country

25   but it's -- yeah.

```
 1              THE COURT:  Is English your native language?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Are you having any difficulty

 4   understanding me today?

 5              THE DEFENDANT:  No.

 6              THE COURT:  Are you now or have been in the recent

 7   past been under the care of a doctor, psychiatrist or other

 8   health care professional for any physical or mental

 9   problems?

10              THE DEFENDANT:  No.

11              THE COURT:  In the last twenty-four hours, have

12   you taken any narcotics, drugs, medicine, pills or alcohol?

13              THE DEFENDANT:  No.

14              THE COURT:  Have you ever in your life been

15   hospitalized or treated for drug or alcohol abuse or

16   psychiatric problems?

17              THE DEFENDANT:  No.

18              THE COURT:  Is your mind clear today?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you feel healthy, focused and

21   alert?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Do you understand everything I've said

24   to you so far?

25              THE DEFENDANT:  Yes.
```

1          THE COURT:  Have you received a copy of what we

2  call the information where the charge against you is set out

3  in writing?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you reviewed the document

6  carefully with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  In that information you are charged

9  with knowingly and intentionally conspiring or agreeing with

10  other people to defraud the United States between 1997 and

11  1999.  And in doing so or in order to do so participating in

12  a scheme to defraud the Internal Revenue Service of taxes

13  that were due and owing as a result of income earned by a

14  company known as Concord.

15          Do you understand what you're accused of in the

16  information?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  This is a felony charge.  When I tell

19  you it is a felony charge, what I mean is that it is

20  punishable by more than a year of incarceration.

21          Because the charge is a felony, you have a right

22  under the United States Constitution to have it lodged

23  against you only be return of an indictment by a properly

24  constituted grand jury.

25          This isn't an indictment.  This is simply a piece

1   of paper that the -- or a few pieces of paper to be more

2   precise -- that the U.S. Attorney's Office prepared to tell

3   you what they're accusing you of with no grand jury

4   proceeding having been held.

5          Unless you waive your constitutional right to

6   indictment, you cannot be charged with a felony like the one

7   the prosecutor wants to bring against you unless and until a

8   grand jury finds by returning an indictment that there is

9   probable cause to believe that you committed the crime with

10  which you're being charged.

11         If you do not waive your right to indictment, the

12  prosecutor may present the case against you to a grand jury.

13  The grand jury would have at least sixteen members and no

14  more than twenty-three members.

15         At least twelve of the sixteen to twenty-three

16  grand jurors, or more than half, would have to vote that

17  there was probable cause to believe that you committed this

18  crime before you could be indicted for it.

19         If the case went before the grand jury, you might

20  be indicted, you might not be indicted.  But if you waive

21  your right to grand jury indictment, that will permit the

22  prosecutor to lodge this charge against you with no grand

23  jury proceeding having ever been held just as though you had

24  been indicted and the case will thereafter proceed as if you

25  had been indicted.

1          Do you understand all the things I've said to you?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Have you discussed with Mr. Dowd

4   whether you wish to waive your right to grand jury

5   indictment?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you wish to waive your right to

8   grand jury indictment?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you have any questions about that?

11          THE DEFENDANT:  No.

12          THE COURT:  Have you been threatened or pressured

13   or promised anything in return for this waiver?

14          THE DEFENDANT:  No.

15          THE COURT:  Can you see this form from where

16   you're sitting?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Did you sign this form?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Before you signed it, did you review

21   it with Mr. Dowd and understand it?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Mr. Dowd, do you know of any reason

24   why your client should not waive his right to grand jury

25   indictment?

1          THE DEFENDANT:  No, Sir.

2          THE COURT:  I find the defendants waiver knowing

3     and voluntary.  And, once again, I endorse the form

4     reflecting his consent to reflect my finding.

5          Mr. Dowd, have you discussed the matter of

6     pleading guilty carefully with Mr. Rodden?

7          MR. DOWD:  Yes, Sir, I did.

8          THE COURT:  Does he understand the rights he'll be

9     waiving if he tenders a plea of guilty?

10         MR. DOWD:  Yes, Sir, he does.

11         THE COURT:  Is he capable of understanding the

12    nature of this proceeding in your judgement?

13         MR. DOWD:  Yes, Sir, he does.

14         THE COURT:  Do you have any doubt about his

15    competence to offer a guilty plea at this time?

16         MR. DOWD:  No, I don't, your Honor.

17         THE COURT:  Have you alerted him to the maximum

18    sentence and fine that could be imposed, discussed with him

19    the particular aspects of his agreement that could affect

20    his sentence, alerted him to the way the sentencing

21    guidelines are likely to be calculated and how they might

22    affect that sentence, and also alerted him to restitution

23    possibilities?

24         MR. DOWD:  Yes, Sir.

25         THE COURT:  Mr. Rodden, have you had an

1    opportunity to review your case very carefully with Mr. Dowd

2    and have you done that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Have you had enough time to meet with

5    him that you're satisfied that you wish to proceed today and

6    that you're ready to do so?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you satisfied to have Mr. Dowd be

9    the attorney defending you in this case?

10             THE DEFENDANT:  Yes.

11             THE COURT:  We've already gone over what the

12   felony information charges you with.  Do you have that tax

13   fraud conspiracy charge clearly in your mind?

14             THE DEFENDANT:  Yes.

15             THE COURT:  You have a right to plead not guilty

16   to that charge.  And that's your right whether you committed

17   this crime or not.

18             It's never lying to plead not guilty.  Every

19   defendant has the right to say they are not guilty whether

20   they committed the crime with which they're charged or not.

21             Is that clear to you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If you were to plead not guilty to

24   this charge, then under the Constitution and laws of the

25   United States you would be entitled to a speedy and public

1  trial by a jury with the assistance of your attorney on all

2  charges pending against you.

3          Is that clear?

4          THE DEFENDANT:  Yes.

5          THE COURT:  At your trial, you would be presumed

6  to be innocent.  The prosecution would be required to

7  overcome the presumption of innocence and to prove that you

8  were guilty by competent evidence and beyond a reasonable

9  doubt.

10         You would have no obligation to prove that you

11  were innocent.  If the prosecution failed to prove that you

12  were guilty beyond a reasonable doubt, the members of the

13  jury would have the duty to return a not guilty verdict.

14  And Judge Johnson would so instruct them.

15         Is that clear?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Yes?  You're staying with me?

18         THE DEFENDANT:  Yes, I am.

19         THE COURT:  That's why juries sometimes return not

20  guilty verdicts even though the members of the jury believe

21  the defendant probably did commit the crime with which he's

22  been charged.

23         Probably is not sufficient to support a guilty

24  verdict.  When juries return not guilty verdicts, it doesn't

25  necessarily mean that the jurors have been convinced of the

1  defendant's innocence.  Jurors are obligated to find a

2  defendant not guilty unless convinced he is guilty beyond a

3  reasonable doubt.

4          Do you see that difference?

5          THE DEFENDANT:  Yes.

6          THE COURT:  If you were to proceed to trial, then

7  during your trial the witnesses for the prosecution would be

8  required to come into the courtroom and to present their

9  testimony against you right in front of you and your

10 attorney.

11         Your attorney would have the right to question the

12 prosecution witnesses on cross-examination.  Your attorney

13 would have the right to raise objections to evidence the

14 prosecutor attempted to offer against you.  And you and your

15 lawyer working together would have the right to call

16 witnesses, present evidence and make arguments to the jury

17 all during the course of the trial.

18         Did you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At your trial, you, yourself would

21 have the right to testify as a witness in your own defense

22 if you made that choice.  But nobody could make you testify

23 at the trial if you preferred not to do it.

24         That's because the United States Constitution says

25 that no one may be required to say anything that is self-

1    incriminating.

2            If you decided that you preferred to remain silent

3    throughout your trial, Judge Johnson would instruct the

4    members of the jury that they could not take your silence

5    into account or hold it against you in any way when they

6    decided upon their verdict.

7            Is that clear to you?

8            THE DEFENDANT:  Yes.

9            THE COURT:  On the other hand, if you offer a

10   guilty plea and Judge Johnson decides that it is proper and

11   should be accepted, you will, by doing so, be surrendering

12   your constitutional right to trial and each of the other

13   rights I've told you about today.

14           There will be no further trial of any kind.  You

15   will have no right to take an appeal from the judgement of

16   guilty that will be entered against you in this case.

17           Judge Johnson will essentially convict you and

18   find you guilty based upon your admission of criminal wrong

19   doing during the proceeding we're holding right now.  And

20   that will free the prosecutor of any responsibility to prove

21   anything about what you've done.

22           Is that clear to you?

23           THE DEFENDANT:  Yes.

24           THE COURT:  If you were to proceed to trial and

25   you were found guilty by verdict of the jury, you would have

1   the right to take an appeal to a higher Court and ask that

2   higher Court to review the legality of all of the

3   proceedings that led up to the conviction.

4            But when you plead guilty, your conviction is

5   based upon the words that you chose to speak yourself.

6   Under that circumstance, there's no right to appeal from the

7   conviction unless you can find some legal flaw in the

8   proceeding that we're holding right now.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  If you plead guilty, I will be asking

12  you questions about what you did so that Judge Johnson and I

13  can be satisfied that your guilty plea is based upon facts

14  that really happened.

15           You don't have to answer my questions unless you

16  wish to proceed with your guilty plea.  But if you do answer

17  them, and in doing so you admit your involvement in crime,

18  you will, by answering my questions, be surrendering your

19  constitutional right not to incriminate yourself.

20           Did you follow that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you still wish to give up your

23  right to trial and all the other rights I've been describing

24  to you today?

25           THE DEFENDANT:  Yes.

1              THE COURT:  I'm told you're making this decision

2    pursuant to a written agreement with the prosecution.   I

3    have before me an unpagenated agreement.  It is eight pages

4    long.   It has a handwritten entry three lines up from the

5    top of page two but is otherwise typewritten except for the

6    docket number on page one and the signatures and date upon

7    the final page.

8              I'm going to ask you to look at it now.

9              (Pause in proceedings)

10             THE COURT:  Mr. Rodden, do you have Exhibit 1

11   before you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you recognize this document?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Is your signature upon its final page?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Before you signed it, did you read it?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Did you review it carefully with Mr.

20   Dowd?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you understand what you were

23   signing?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you have any questions about

1 anything in the agreement?

2          THE DEFENDANT:  No.

3          THE COURT:  Does the written document you're

4 holding in your hands contain a full and accurate statement

5 of everything you and the prosecution have agreed to

6 regarding your case?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anyone promised you anything in

9 return for your guilty plea other than what is written down

10 in that document?

11          THE DEFENDANT:  No.

12          THE COURT:  Can I have it back, please?

13          (Pause in proceedings)

14          THE COURT:  We have already been over the charge

15 that the document contemplates a plea of guilty to.  I want

16 to ask a couple of questions about the agreement and its

17 terms before we go forward, though.  And I guess I'm

18 directing them primarily to counsel.

19          Mr. Kleinberg has provided me with a limitations

20 waiver document.  It is dated September 8, 2008 and proports

21 to waive the limitations period until October 15, 2008.

22          The charges in the information are time barred

23 even if that period is excluded.  And I want to make

24 certain, Mr. Dowd, that you and your client are aware that

25 he is either waived in other documents limitations defenses

1    or is doing so by his plea of guilty today if he goes

2    forward with it.

3            MR. DOWD:  We have both executed prior documents

4    and executed this document to effectuate a waiver of the

5    statute of limitations up to and through October 15, 2008.

6            THE COURT:  Thank you.  There is also a reference

7    to restitution in the document.  The restitution provision

8    indicates that the defendant is agreeing to make restitution

9    for tax losses over a range of years; 1997 through 2004.

10   That is to say if the original is like the one that --

11   through 2002, excuse me.  That is a longer range of years

12   than the substantive offense to which he is being asked to

13   plead guilty.

14           Now, my reading of Section 3663 of Title 18, which

15   governs restitution, and in particular Subsection (a)(3),

16   states that a Court may order restitution in any criminal

17   case to the extent agreed to by the parties in a plea

18   agreement.

19           But I believe that there is at least an argument

20   that otherwise restitution is limited to paying back the

21   losses incurred or gains accrued by virtue of the charged

22   offense.

23           Here, of course, the restitution goes beyond the

24   scope of the charged offense.  Has that also been taken into

25   account and considered?

1           MR. DOWD:  Yes, your Honor.

2           THE COURT:  And it's your advice to your client

3    that he proceed regardless of those issues?

4           MR. DOWD:  Yes, your Honor.

5           THE COURT:  Thank you.  I need to review with you

6    now, Mr. Rodden, the penalties you face if you decide to go

7    forward with your plea of guilty.  The statute you're

8    accused of violating authorizes a sentence of imprisonment

9    that could be as long as five years.

10          Is that clear to you?

11          THE DEFENDANT:  Yes.

12          THE COURT:  In addition, the statute authorizes a

13   term of supervised release that could be as long as three

14   years.

15          Is that clear?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Supervised release is a period of time

18   that doesn't even start to run until you finish serving any

19   prison sentence that's imposed upon you.  Only once you're

20   clear of your prison sentence can you begin to work down the

21   supervised release term that could be as long as three

22   years.

23          Do you understand?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Once you're on supervised release,

1    although you won't be in physical custody any longer, you

2    still won't be completely free because you'll have to follow

3    a lot of rules.

4              There are so many I can't even list them all for

5    you.  But they will include restrictions on your right to

6    travel freely and requirements that you regularly report to

7    a probation officer, follow the officer's instructions,

8    answer the officer's questions and commit no new crimes at

9    all.

10             Do you understand that nature of supervised

11   release?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you break any supervised release

14   rule, even if in doing so you do not commit any new crime,

15   you can be arrested, brought back to the Court and sent back

16   to prison for up to two more years of custody with no credit

17   for the time you spent serving your original sentence or

18   while your freedoms were restricted on supervised release.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  You could be fined as much as a

22   quarter of a million dollars or twice the tax losses you

23   caused by the conspiracy or the amounts you gained from the

24   conspiracy, whichever is greatest.

25             Is that clear?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You could be required to make

3   restitution of the amounts that were lost by virtue of the

4   offense conduct and by virtue of your agreement even beyond

5   the offense conduct.  You could be required to make

6   restitution for tax losses incurred as a result of your

7   actions between 1997 and 2002.

8          Is that clear?

9          THE DEFENDANT:  Yes.

10         THE COURT:  You will be subject to a $100 special

11  assessment payment at or about the time you are sentenced.

12         Do you understand?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Mr. Kleinberg, is it the government's

15  belief that this defendant is a United States citizen?

16         MR. KLEINBERG:  I have just learned from the

17  presentence report that he is not.  I did not -- I was not

18  aware of that before.

19         THE DEFENDANT:  No, I'm a green card holder.

20         MR. KLEINBERG:  Oh, thank you.  I thought he was.

21         THE COURT:  I'm sorry, he's a what?

22         THE DEFENDANT:  Resident alien, green card holder.

23         MR. KLEINBERG:  That's okay, no.  I just learned

24  through the presentence report that he's an LPR.  It was my

25  understanding before that he was a citizen.  Apparently, I'm

1  incorrect.

2          THE COURT:  Well, is this a deport able offense?

3  Is this a crime of moral turpitude?  It's a fraud offense,

4  right?

5          MR. KLEINBERG:  Yes, it is, your Honor.  It is.

6          THE COURT:  So, in addition to everything else

7  that we've been discussing, this defendant is subject to

8  deportation based upon his plea of guilty.  Is he not?

9          MR. KLEINBERG:  That's correct, your Honor.

10          THE COURT:  Mr. Dowd, have you had -- If I

11  discerned you conversation with your client correctly,

12  you're learning as well that he's a non-citizen today.

13          MR. DOWD:  Yes.

14          THE COURT:  Should we have a recess so that you

15  can --

16          MR. DOWD:  Yes.

17          THE COURT:  -- discuss this matter and its

18  implications?

19          MR. DOWD:  Yes.

20          THE COURT:  Mr. Kleinberg, I'll leave you the plea

21  agreement and have you amend the penalty provisions.

22          MR. KLEINBERG:  I will

23          THE COURT:  So that it reflects the scope of

24  penalties the defendant faces.  We're reconvene in five

25  minutes.

1          (Pause in proceedings)

2          MR. KLEINBERG:  Your Honor, we have just finished

3     our discussion.  Let me tell you where we are.  We apologize

4     to the Court.  We did think, both of us, that he was a U.S.

5     citizen.  I noticed he was not in the middle of the colloquy

6     when I reviewed that section of the Pretrial Services

7     report.

8          I think the appropriate thing at this point is for

9     us not to go forward.  I think I should be discussing this

10     matter further with the defendant and with his counsel.

11          He has executed -- I don't feel comfortable going

12     forward at this point in light of this new information.  And

13     I would like more time to discuss it with them.  They have

14     executed an additional waiver of the statute of limitations

15     and I apologize.

16          THE COURT:  Okay.

17          MR. DOWD:  I think that things, Judge, so that you

18     have some context for this is that Mr. Rodden has been

19     cooperating for a long time.

20          And I assumed he was a citizen.  I mean, and

21     because of the speed of things we were doing, I never even

22     got to look at more than the last page of the Pretrial

23     Services report because that's what I focus on.  And, so, I

24     didn't see it.

25          But I think we have to have some more discussions.

1    It's a serious matter.

2            THE COURT:  Well, it is a serious matter.  That's

3    a serious matter.  And, frankly, I don't know what he's been

4    doing up until now but even if it's not relevant to what

5    he's permitted to plead guilty to, it's relevant to bail.

6            As I read the Pretrial Services report, I see that

7    virtually all of his family is overseas.  And that is

8    certainly relevant to flight risk.

9            MR. DOWD:  It has -- Judge, I might say that

10   because of his cooperation here, his activities -- I don't

11   know whether this office but an earlier assistant where we

12   started two or three assistants ago had advised the New York

13   County District Attorney's Office and in that case we had

14   already based on the same contact entered the plea

15   agreement, he had been sentenced and is on probation at the

16   present moment.

17           THE COURT:  Yes, I saw that.

18           MR. DOWD:  But it's, I think, that none of us

19   foresaw and what I think we want to investigate is what is

20   it that we can do to certainly and that's clearly my intent

21   to prevent what would be a (ui), I think, result for my

22   client in light of what he's done.

23           THE COURT:  Well, I'm certainly not going to push

24   a plea forward that counsel are not ready to go forward

25   with.  But, it is a little frustrating to frankly spend the

1   time to prepare for and review the restitution question and

2   limitations issues and find out that this kind of basic

3   information is coming forward now after a lengthy

4   relationship between the office and the defendant is pretty

5   core pedigree information that's important.

6          But I'm glad it came out before the plea was

7   finalized and there's time to address it.  I mean, frankly,

8   you know, I'm not -- I'm not here to chastise anybody but we

9   can all imagine the consequence if I had asked the question

10  and we went forward and I recommended his plea be accepted

11  and then we were in the position of trying to figure out

12  whether it should be vacated or not on this basis.  I don't

13  think the answer is very clear.

14          MR. DOWD:  I first discovered it while the

15  colloquy was going on.  I would have stood up if it had not

16  come up.  I expected it would.  I saw it just shortly before

17  it did come up.

18          THE COURT:  No, I mean, it might not have come out

19  at all.

20          MR. DOWD:  That's correct.

21          THE COURT:  If you hadn't reviewed the presentence

22  report carefully, I had an agreed upon bail, we took the

23  plea and then I recommend it be accepted and there we are.

24  So, you know, let's look at it as an opportunity to add

25  something to our check lists.

1          MR. DOWD:  Okay.

2          THE COURT:  See you next time.

3          THE CLERK:  Excuse me, your Honor.  Bail (ui).

4          MR. KLEINBERG:  Technically it does, your Honor --

5          THE COURT:  Well, do we have a case?  Are you

6  going to file the information?

7          MR. KLEINBERG:  Well, actually, at this point, no,

8  I won't file the -- even though he has been processed, we

9  have not filed the information.  So, --

10          THE COURT:  There's no charge.

11          MR. KLEINBERG:  There's no charge against him at

12  the present so we don't need bail.

13          THE COURT:  Mr. -- Right.  Mr. Kleinberg, has the

14  7(b) notice been filed?

15          MR. KLEINBERG:  The 7(b) notice was filed.

16          THE COURT:  Are you prepared to dismiss the case?

17          MR. KLEINBERG:  At this point, yes.

18          THE COURT:  Case dismissed.  Case closed.

19          MR. KLEINBERG:  Okay.

20          THE COURT:  File an order, you know, get me an

21  order that dismisses the case.

22          MR. KLEINBERG:  Okay.

23          THE COURT:  So that the clerk can close it.  Okay?

24          MR. KLEINBERG:  Okay, I will do that.

25          THE COURT:  No charges pending.  I appreciate your

1   keeping your eye on the ball but I think in this

2   circumstance I have no charge to hold him on so I have no

3   charge to set bail on.  He's free.  He's not under arrest.

4   He's not got anything that's he's facing.

5           MR. KLEINBERG:  I believe I still need the

6   cooperation agreement back even though it's now a dismissed

7   case.

8           THE COURT:  You can have it all back.

9           MR. KLEINBERG:  Okay, thank you, your Honor.

10          THE COURT:  Okay.

11          * * * * * * * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct transcript

19   from the electronic sound recording of the proceedings in

20   the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                        January 7, 2009